**GOODMAN PIPING PRODUCTS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**Nos. 1316, 1452, Dockets 84–4046, 84–4064.**

United States Court of Appeals, Second Circuit.

Opinion Aug. 13, 1984.

Argued June 4, 1984.

Decided June 8, 1984 *.

Steven J. Pheterson, Rochester, N.Y. (Irving Pheterson, Pheterson & Pheterson, Rochester, N.Y., Ira J. Smotherman, Jr., Seth Price, Stokes, Shapiro, Fussell & Genberg, Atlanta, Ga., of counsel), for petitioner.

Kathleen Murray, Atty. N.L.R.B., Washington, D.C. (William R. Stewart, Deputy Asst. Gen. Counsel, Wilford W. Johansen, Acting Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy

---

* Originally decided by summary order; now filed in opinion form in response to motion filed by

the NLRB.

Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel, for respondent.

Jonathan G. Axelrod, Washington, D.C., (William W. Osborne, Jr., Beins, Axelrod & Osborne, P.C., Washington, D.C., of counsel), for intervenor Road Sprinkler Fitters Local Union No. 669.

Before OAKES and NEWMAN, Circuit Judges, and MISHLER, District Judge.**

PER CURIAM:

Goodman Piping Products, Inc. (GPP), seeks review of a decision by the National Labor Relations Board that it is the alter ego of the E.G. Sprinkler Corp. (EG) and thus obliged to honor the collective bargaining agreement between EG and the Road Sprinkler Fitters Local 669 (the Union). The Union has intervened in this case.

EG was incorporated in 1973. Fifty percent of its stock was owned by James Goodman and fifty percent by George Edmunds. In 1979, Goodman bought Edmunds' stock and became the sole stockholder. Thereafter he operated and managed the company by himself. Also in 1979, EG entered into a collective bargaining agreement with the Union, effective through March 31, 1982. EG's business involved the installation, maintenance, and repair of fire protection and control systems.

EG suffered severe financial problems during 1981, apparently because several customers failed to pay for work performed by the company. As a result of these problems, EG ceased operations in December, 1981, and surrendered its assets to the bank in January, 1982.

GPP was incorporated in 1981 with Goodman's wife, Victoria Goodman, as the sole stockholder, director, and officer. GPP's purpose was to manufacture a new pipefitting. Shortly after EG went out of business, James Goodman worked on the installation and maintenance of fire protection equipment through GPP. The administrative law judge (ALJ) found that he, Good-

man, had signed "numerous contracts" on behalf of GPP with prior customers of EG. Goodman himself estimated that 80% of GPP's present work involves precisely the same kind of work that was formerly performed by EG's union employees. Although Victoria Goodman was formally involved in the company, James made the hiring and firing decisions for GPP.

The ALJ found that GPP was the alter ego of EG, because it has substantially identical management, business purpose, supervision, customers, and ownership, and thus that EG and GPP engaged in unfair labor practices by failing to adhere to the collective bargaining agreement in the operation of GPP. The Board agreed with the ALJ's determination and ordered EG and GPP to cease and desist from their unfair labor practices. It also required EG and GPP to recognize and bargain with the Union and to make the Union and its employees whole for any losses they may have suffered as a result of the failure of the companies to honor and implement their collective bargaining agreement. GPP petitions this court to set aside these orders. We decline to do so.

 Whether GPP is the alter ego of EG is a question of fact, *Southport Petroleum Co. v. NLRB*, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942), and thus if there is substantial evidence to support the Board's finding, it must be enforced. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Although the cases explain that the test of alter ego status is "flexible," and the Board must therefore weigh the circumstances of the individual case, a number of factors are recognized as key: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. *Nelson Electric v. NLRB*, 638 F.2d 965, 968 (6th Cir.1981), citing *Crawford Door Sales Co.*, 226 NLRB 1144 (1976). Here, the record bears very substantial evidence that EG and GPP

** Of the Eastern District of New York, sitting by designation.

shared substantially identical management, supervision, customers, ownership, and business purpose.

The argument that the Board must find anti-union animus or an intent to evade union obligations before it can impose alter ego status is unpersuasive. The cases relied on by the appellant show that anti-union animus may be "germane," *NLRB v. Tricor Products, Inc.*, 636 F.2d 266, 270 (10th Cir.1980), or even a sufficient basis for imposing alter ego status, *Southport Petroleum Co. v. NLRB*, 315 U.S. at 106, 62 S.Ct. at 455; they do not establish that anti-union motivation is necessary.

Thus, on the findings of the ALJ and the Board, we affirm the Board's findings and order.