80 F.3d 743
 151 L.R.R.M. (BNA) 2941, 131 Lab.Cas. P 11,544
 LIHLI FASHIONS CORPORATION, INC.; King Kuo International
Enterprises Inc.; Lihli of New York, Inc.; and
Liyan International, Inc., Petitioners,
Cross-Respondents,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner,
International Ladies Garment Workers Union, Local 89-22-1, Intervenor.
 Nos. 823, 1042, Dockets 95-4100, 95-4120.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 3, 1996.
Decided April 2, 1996.
As Amended May 9, 1996.
 
 Gary C. DiLeonardo, Forest Hills, N.Y. (Robert A. Schutzman, Forest Hills, NY, of counsel), for Petitioners-Cross-Respondents.
 Vincent J. Falvo, Jr., National Labor Relations Board, Washington, DC (Peter Winkler, Supervisory Attorney, Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Washington, DC, of counsel), for Respondent-Cross-Petitioner.
 Louie Nikolaidis, Lewis, Greenwald, Clifton & Lewis, P.C., New York City (Everett E. Lewis, Greenwald, Clifton & Lewis, P.C., New York City, of counsel), for Intervenor.
 Before: McLAUGHLIN, JACOBS, and CALABRESI, Circuit Judges.
 PER CURIAM:
 
 
 1
 Lihli Fashions Corporation, Inc., King Kuo International Enterprises, Inc., Liyan International, Inc., and Lihli, Inc. are manufacturers and marketers of upscale women's clothing. Collectively, they appeal from a decision of the National Labor Relations Board, finding that Lihli, Inc. and Liyan International, Inc.: (1) constitute a "single employer;" (2) are "alter egos" of Lihli Fashions Corporation, Inc. and King Kuo International Enterprises, Inc.; and (3) as such, are bound by the collective bargaining agreement between Lihli Fashions Corporation, Inc., King Kuo International Enterprises, Inc., and the International Ladies Garment Workers Union, Local 89-22-1.
 
 BACKGROUND
 
 2
 Lihli Fashions Corp., Inc. and King Kuo International Enterprises, Inc. (together "LFC/King Kuo") manufactured expensive women's clothing under an exclusive contract with the famous designer, Adolfo. Adolfo marketed and sold his clothing line to upscale department and specialty stores.
 
 
 3
 LFC/King Kuo were owned and managed by Lihli Hsu, who was the president and chief operating officer of both entities. At various times, Lihli Hsu's children (Henry, Karen, and Ruth Hsu) worked at the LFC/King Kuo factory, located in Long Island City and owned by the Hsus.
 
 
 4
 The production, maintenance, and shipping workers of LFC/King Kuo were represented by the International Ladies Garment Workers Union, Local 89-22-1 ("Local 89-22-1") under a collective bargaining agreement (the "agreement"). Among other things, the agreement required LFC/King Kuo to: (a) make contributions to jointly administered pension and welfare funds; (b) grant certain wage and cost-of-living increases to employees; and (c) grant union representatives access to its premises.
 
 
 5
 LFC/King Kuo thereafter failed to grant its employees a cost-of-living increase due under the agreement, and ceased making required contributions to the union's pension and welfare funds. Local 89-22-1 filed grievances against LFC/King Kuo, and obtained an award after arbitration.
 
 
 6
 In early 1993, Adolfo announced his retirement. The last Adolfo garments were shipped, and LFC/King Kuo ceased operations. Lihli Hsu then began designing her own line of women's clothing--under the name "Lihli"--which was similar to but less expensive than the Adolfo line. The Hsu family formed two corporations to manufacture and market the Lihli line: Liyan International, Inc. ("Liyan"), which manufactures the clothes, and Lihli, Inc., which sells and markets them.
 
 
 7
 Liyan is owned in equal shares by Henry and Ruth Hsu, and Lihli Hsu serves as its president. Liyan operates out of the same factory, uses most of the same equipment, retains the same suppliers, and employs many of the same workers as did LFC/King Kuo. Lihli, Inc. is owned in equal shares by Lihli, Ruth, Karen, and Henry Hsu, and Lihli Hsu serves as its president. The company operates out of Adolfo's former showroom in Manhattan, and sells most of its new clothing line to former Adolfo customers.
 
 
 8
 In April 1993, Lihli Hsu wrote to Local 89-22-1, stating that LFC/King Kuo "will be going out of ... business. Please note that all agreements will be terminated." Lihli, Inc. and Liyan denied Local 89-22-1 access to their employees, asserting that they were no longer a union shop.
 
 
 9
 Local 89-22-1 filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"), alleging that LFC/King Kuo violated § 8(a)(1), (5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), (5). Specifically, the union charged that LFC/King Kuo had established alter ego corporations in order to evade their obligations under the agreement.
 
 
 10
 A hearing was held before Administrative Law Judge ("ALJ") Raymond P. Green. ALJ Green issued a Recommended Order, finding that Lihli, Inc. and Liyan: (1) constitute a "single employer;" (2) are "alter egos" of LFC/King Kuo; and (3) as such, are bound by the collective bargaining agreement between LFC/King Kuo and Local 89-22-1. The NLRB fully adopted ALJ Green's Recommended Order. See Lihli Fashions Corp., 317 N.L.R.B 163, 1995 WL 255650 (N.L.R.B. Apr.28, 1995).
 
 
 11
 LFC/King Kuo, Liyan, and Lihli, Inc. now appeal. We affirm in part and reverse in part.
 
 DISCUSSION
 
 12
 LFC/King Kuo, Liyan, and Lihli, Inc. seek to vacate the NLRB's decision and order, arguing that: (1) Lihli, Inc. and Liyan are not a "single employer;" and (2) Lihli, Inc. is not the "alter ego" of LFC/King Kuo. (Petitioners concede that Liyan is the alter ego of LFC/King Kuo.) Local 89-22-1 intervenes, arguing for enforcement of the NLRB's decision.
 
 
 13
 The determinations of both single employer and alter ego status are questions of fact. Goodman Piping Prods., Inc. v. NLRB, 741 F.2d 10, 11 (2d Cir.1984) (per curiam); NLRB v. Al Bryant, Inc., 711 F.2d 543, 551 (3d Cir.1983), cert. denied, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); Limbach Co. v. Sheet Metal Workers Int'l Ass'n, 949 F.2d 1241, 1258-59 (3d Cir.1991). Factual determinations of the NLRB may be set aside only if those determinations are not "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(f); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S.Ct. 456, 463-65, 95 L.Ed. 456 (1951); Al Bryant, 711 F.2d at 551. Deference is given to the NLRB's decision, and all reasonable inferences are drawn in its favor. NLRB v. James Thompson & Co., 208 F.2d 743, 746 (2d Cir.1953).
 
 I. Single Employer Doctrine
 
 14
 LFC/King Kuo, Liyan, and Lihli, Inc. argue that Liyan and Lihli, Inc. are not a "single employer." We disagree.
 
 
 15
 Separate companies are considered a "single employer" if they are " 'part of a single integrated enterprise.' " Clinton's Ditch Coop. Co. v. NLRB, 778 F.2d 132, 137 (2d Cir.1985) (quoting NLRB v. Browning-Ferris Indus., Inc., 691 F.2d 1117, 1122 (3d Cir.1982)), cert. denied, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). The Supreme Court, in Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam), established a four-factor test to determine "single employer" status. The test examines the "interrelation of operations, common management, centralized control of labor relations and common ownership." Id. Also relevant are the use of common office facilities and equipment and family connections between or among the various enterprises. See Three Sisters Sportswear Co., 312 N.L.R.B. 853, 1993 WL 398465, at * 15 (N.L.R.B. Sept. 30, 1993); Goodman Investment Co., 292 N.L.R.B. 340, 1989 WL 223774 at * 10-11 (N.L.R.B. Jan. 17, 1989). To demonstrate single employer status, not every factor need be present, and no particular factor is controlling. See Three Sisters, 1993 WL 398465, at * 15. "Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies.' " Al Bryant, 711 F.2d at 551 (citation omitted).
 
 
 16
 Here, the NLRB concluded that Liyan and Lihli, Inc. are a "single employer," and there is substantial evidence to support this finding. The operations of Lihli, Inc. and Liyan are functionally integrated. The garments manufactured by Liyan are exclusively sold to and marketed by Lihli, Inc.; Lihli, Inc., in turn, provides services solely to Liyan. Lihli, Inc. and Liyan also have overlapping ownership and control: Liyan is owned in equal shares by Henry and Ruth Hsu; and Lihli, Inc. is owned in equal shares by Lihli, Ruth, Karen, and Henry Hsu. See, e.g., Goodman Piping, 741 F.2d at 11 (common ownership and control established through familial relationships). Lihli Hsu serves as president of both companies, splits her time between the Manhattan showroom and the Long Island factory, and exercises ultimate business and artistic control over both entities. All members of the Hsu family receive payroll checks from both corporations. There is also evidence of centralized control of labor relations--both companies share some employees and appear to make joint hiring and firing decisions.
 
 
 17
 But, critically, the determination that separate companies are a "single employer" is not enough to bind all the separate companies to the collective bargaining agreements of any one of the companies. Rather, something more must be shown. As the Supreme Court held in South Prairie Construction Co. v. Local No. 627, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam), for one company to be bound by a collective bargaining agreement made by another company, it must be shown not only that they are a "single employer," but, additionally, that together they represent an appropriate employee bargaining unit. Id. at 804-05, 96 S.Ct. at 1844-45; see also Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., 944 F.2d 1037, 1046 (2d Cir.1991) (holding that "single employer/single unit doctrine" has "the same binding effect on a non-signatory" as the "alter ego doctrine"); Local One v. Stearns & Beale, Inc., 812 F.2d 763, 769 (2d Cir.1987) ("[T]o bind a non-signatory company to a collective bargaining agreement, both single employer and single bargaining unit status must be found."); Stardyne, Inc. v. NLRB, 41 F.3d 141, 144 (3d Cir.1994) ("When two entities are found to be a single employer, one entity's collective bargaining agreement covers the other entity as well, provided that the two entities' employees constitute a single appropriate bargaining unit.").
 
 
 18
 Thus, even though Lihli, Inc. is a "single employer" with Liyan, and Liyan is concededly bound by the collective bargaining agreement between LFC/King Kuo and Local 89-22-1, Lihli, Inc. is not bound by that agreement unless it and Liyan constitute an appropriate bargaining unit. The parties concede that the sales and marketing employees of Lihli, Inc. do not constitute an appropriate bargaining unit with the production, maintenance, packing, and shipping employees of Liyan. Thus, while Liyan is bound by the collective bargaining agreement between LFC/King Kuo and Local 89-22-1, Lihli, Inc. is not so bound. See South Prairie, 425 U.S. at 805-06, 96 S.Ct. at 1844-45.
 
 
 19
 We note, however, that the mere status of Liyan and Lihli, Inc. as a "single employer" has independent legal significance. Specifically, that finding is enough to hold them jointly and severally liable for each other's debts and obligations, including financial obligations under the collective bargaining agreement. See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir.1995) (in Title VII context, parent-subsidiary liability established by showing of "single employer" under four-part test); NLRB v. International Measurement and Control Co., 978 F.2d 334, 340 (7th Cir.1992) (parent corporation liable for obligations to employees under collective bargaining agreement between subsidiary and union).
 
 II. Alter Ego Doctrine
 
 20
 Although conceding that Liyan is the "alter ego" of LFC/King Kuo, petitioners contend that Lihli, Inc. does not hold the same status. We agree, and reverse the NLRB's decision in that regard.
 
 
 21
 The "hallmarks of the alter ego doctrine include 'whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.' " Truck Drivers, 944 F.2d at 1046 (quoting Goodman Piping, 741 F.2d at 11). If two companies are deemed alter egos of each other, then each is bound by the collective bargaining agreements signed by the other. See Howard Johnson Co. v. Detroit Local Joint Executive Bd., 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974); Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 62 S.Ct. 452, 455-56, 86 L.Ed. 718 (1942); Truck Drivers, 944 F.2d at 1046.
 
 
 22
 While the alter ego doctrine has "the same binding effect on a non-signatory as the single employer/single unit doctrine," the two doctrines are "conceptually distinct." Truck Drivers, 944 F.2d at 1046. The focus of the alter ego doctrine, unlike that of the single employer doctrine, is on " 'the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.' " Id. (quoting Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc., 690 F.2d 489, 508 (5th Cir.1982), cert. denied, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)); see also Goodman Piping, 741 F.2d at 12 (evidence of "anti-union animus or an intent to evade union obligations ... may be 'germane' ") (citation omitted). Thus, the alter ego test is notably different than the "four-factor" single employer test, as other courts have recognized. See, e.g., Stardyne, 41 F.3d at 152; Local 701 v. Favia Elec. Co., 995 F.2d 785, 788-89 (7th Cir.1993).
 
 
 23
 While Liyan is concededly the alter ego of LFC/King Kuo, Lihli, Inc. cannot be so characterized. True, they all share common ownership and management, but the record indicates that Lihli, Inc. has a business purpose completely different from Liyan and LFC/King Kuo. Lihli, Inc. was formed to fill the gap created by Adolfo's retirement. Prior to his retirement, Adolfo exclusively marketed and sold his clothing line, a function never performed by either LFC/King Kuo or Liyan. Adolfo's company was a separate and distinct entity, and it was not bound by the collective bargaining agreement between LFC/King Kuo and Local 89-22-1. Moreover, although Lihli, Inc. took over Adolfo's Manhattan showroom and sells to many former Adolfo customers, Lihli, Inc. uses none of the same equipment as, nor does it have customers in common with, Liyan or LFC/King Kuo.
 
 
 24
 In addition, while the decision to dissolve LFC/King Kuo and form Liyan was clearly "an attempt to avoid the obligations of [the] collective bargaining agreement," Truck Drivers, 944 F.2d at 1046, there is no evidence indicating that the formation of Lihli, Inc. was motivated by the same intent. Rather, as noted above, Lihli, Inc. stepped into the fashionable shoes previously worn by Adolfo. Nothing in the record is inconsistent with the conclusion that Lihli, Inc. was established in a legitimate attempt to market and sell products that had previously been marketed and sold by another company.
 
 CONCLUSION
 
 25
 In summary, we find that there is insubstantial evidence to support the NLRB's conclusion that Lihli, Inc. is the alter ego of LFC/King Kuo, and reverse the NLRB's decision on this issue. We find, however, that there is sufficient evidence to support the NLRB's finding that Liyan and Lihli, Inc. constitute a single employer, and thus affirm on this issue. We note, however, that while Lihli, Inc. is not bound by the collective bargaining agreement, Lihli, Inc.--as a single employer with Liyan--may nonetheless be held liable for any of Liyan's obligations under the collective bargaining agreement.
 
 
 26
 Accordingly, the decision of the NLRB is A FFIRMED IN PART AND REVERSED IN PART.