Nancy R. **PELTIER,** Plaintiff,

v.

**APPLE HEALTH CARE, INC.,** Brightview Nursing and Retirement Center, Ltd., Gregory Hanley, and Sarah Seelye, Defendants.

Civil No. 3:99CV71 (DJS).

United States District Court, D. Connecticut.

Sept. 29, 2000.

James S. Brewer, West Hartford, CT, for plaintiff.

Rachel L. Kittredge, Avon, CT, for defendants.

## MEMORANDUM OF DECISION

SQUATRITO, District Judge.

The plaintiff, Nancy Peltier, has filed the instant complaint against the defendants, Apple Health Care, Inc., Brightview Nursing and Retirement Center, Ltd., Gregory Hamley and Sarah Seelye, alleging violations of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621, *et seq.*, the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, and Conn. Gen.Stat. § 46a–60(a)(1), as well as breach of contract, negligent misrepresentation, defamation and intentional and negligent infliction of emotional distress. Now pending before the court is the defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56(c).[1] For the reasons set forth below, the defendants' motion is GRANTED with respect to the plaintiff's claims pursuant to the ADA and Conn. Gen.Stat. § 46a–60(a)(1); the defendants' motion is DENIED in all other respects.

---

1. The plaintiff objects that the instant motion is untimely because the defendants filed it before the close of discovery. The plaintiff contends that she has not yet taken the depositions of several key witnesses and many factual issues relevant to the instant motion remain to explore. Because the court concludes that the state of discovery in this case does not prejudice the plaintiff in her defense of the motion for summary judgment, this objection is overruled.

## FACTS

The plaintiff, Nancy Peltier, began service as a staff nurse at Brightview Nursing and Retirement Center, Ltd. ("Brightview") on or about March, 1981. During all relevant times, defendant Gregory Hamley held the position of Administrator at Brightview and defendant Sarah Seelye was the Director of Nurses. Apple Health Care, Inc. ("Apple") is the management company for Brightview and performs selected functions pursuant to an oral management contract. On March 27, 1997, Ms. Peltier was terminated from her employment at Brightview. She was sixty-six years old when she was terminated.

On July 22, 1997, Ms. Peltier timely filed a complaint with the Connecticut Commission on Human Rights & Opportunities ("CCHRO") and the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination. The CCHRO ultimately dismissed the plaintiff's complaint as unmeritorious. In its notice of dismissal dated October 20, 1997, the CCHRO informed Ms. Peltier that she could either file a request for reconsideration with the CCHRO or appeal the disposition to the Superior Court of the State of Connecticut. Ms. Peltier filed a timely request for reconsideration on November 4, 1997. In a letter dated February 4, 1998, the CCHRO rejected the plaintiff's request for reconsideration and indicated that Ms. Peltier could file an administrative appeal challenging the agency's decision in the Connecticut Superior Court. Uncertain of her options, Ms. Peltier sent letters to both the CCHRO and the EEOC on February 17, 1998, requesting right to sue letters from each agency. In a letter dated February 18, 1998, the CCHRO responded to the plaintiff's request, stating "the Commission does not have the statutory authority to grant you a release to sue requested by you." (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. F.) The EEOC responded in a letter dated February 25, 1998, that "[a] lawsuit under the ADEA may be filed at any time 60 days after the charge was filed. A Right–to–Sue Upon Request is not a prerequisite to filing suit under the ADEA." (Defs.' Mem. Supp. Mot. Summ. J., Ex. 6.) Ultimately, the EEOC concluded its investigation by adopting the findings of the CCHRO dismissing the plaintiff's claim and issued a right to sue letter on May 12, 1998. However, Ms. Peltier asserts that she never received the EEOC's right to sue letter. Ms. Peltier retained counsel in December of 1998 and filed the instant complaint on January 14, 1999, 247 days after the EEOC issued the plaintiff's right to sue letter.

## STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Gallo,* 22 F.3d at 1223; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See*

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## DISCUSSION

The defendants move for summary judgment with respect to the plaintiff's claims against Apple as well as the plaintiff's age and disability discrimination claims against all defendants. The court will address the defendants' challenges to each of the plaintiff's claims seriatim.

## I. The Plaintiff's Claims Against Apple

The defendants contend that Apple is entitled to the entry of summary judgment on its behalf because it was not the plaintiff's employer during any time relevant to the instant action. Rather, the defendants assert that the plaintiff was employed by Brightview at all relevant times, and the plaintiff has no legal relationship with Apple whatsoever. The defendants concede that Apple is the management company for Brightview, but indicate that Apple performs only limited functions for Brightview which do not include hiring, firing or payroll. (*See* Hambley Aff. ¶¶ 6–7, Def.'s Reply Br. Pl.'s Mem. Opp'n, Ex. 1.)

Ms. Peltier responds that there is evidence indicating that Apple was the plaintiff's employer under either the single or joint employer doctrines. The court will examine the applicability of both doctrines below.

### A. Single Employer Doctrine

A "single employer" situation exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a 'single employer.'" *NLRB v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d [1117], 1122 [ (3d Cir.1982) ]. The single employer standard is relevant when "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a 'single enterprise.'" *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402, 80 S.Ct. 441, 443, 4 L.Ed.2d 400 (1960).

*Clinton's Ditch Coop. Co., Inc. v. NLRB.*, 778 F.2d 132, 137 (2d Cir.1985), *cert. denied*, 479 U.S. 814, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986). The Second Circuit has adopted a flexible four-factor test to determine whether two separate entities qualify for single employer status. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir.1995). The factors include: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996) (noting that the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances).

The first factor, interrelation of operations, may be found where the two entities share governing board members and by-laws, as well as control of day-to-day operations. *See Owens v. American Nat'l Red Cross*, 673 F.Supp. 1156, 1160–61 (D.Conn. 1987). Common management, the second factor, may be evidenced by an overlap in officers or members who sit on the board of directors. *See id.* at 1161. The third and most important factor, centralized control of labor relations, is found where the entities share policies concerning "hiring, firing, and training employees, and in developing and implementing personnel policies and procedures." *Id.* at 1161; *see*

*Meng v. Ipanema Shoe Corp.,* 73 F.Supp.2d 392, 403 (S.D.N.Y.1999) (stating that separate human resource departments, policies and decisions regarding hiring, discipline and firing are factors to consider when determining whether there is centralized control of labor relations); *see also Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747 (2d Cir.1996) (noting that although all four factors need not be met, most courts focus their inquiry on centralized control of labor relations). Finally, a determination of the fourth factor, common ownership, may be influenced by a finding of absolute authority over financial matters, including budgeting and payment of employees. *See Owens,* 673 F.Supp. at 1161. The court now turns to an analysis of these four factors in the instant case.

First, the plaintiff has offered evidence suggesting that Apple and Brightview have interrelated operations. The two entities share officers including the president, director, treasurer and agent. (*See* Browning Aff. ¶ 3, Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. D.) However, it remains unclear at this time to what extent, if any, Apple controls the day-to-day operations at Brightview. (*See* Hambley Aff. ¶ 7, Def.'s Reply Br. Pl.'s Mem. Opp'n, Ex. 1 (stating that Apple provides only legal, accounting, data-processing, dietary and nursing advice to Brightview).)

Review of the second factor, common management, creates similar uncertainties. As stated above, Apple and Brightview share directors and officers. Further, the defendants concede that Apple is the management company for Brightview. (*See* Hambley Aff. ¶ 3, Def.'s Mem. Supp. Mot. Summ. J., Ex. 8.) However, Mr. Hambley, Chief Financial Officer for Apple, states that the management functions performed by Apple for Brightview are limited to "legal, accounting, data-processing, dietary and nursing advice." (Hambley Aff. ¶ 7, Def.'s Reply Br. Pl.'s Mem. Opp'n, Ex. 1.)

There also appears to be a question of fact regarding centralized control of labor relations. Mr. Hambley states that Apple does not control hiring or firing at Brightview. (*See* Hambley Aff. ¶ 4, Def.'s Reply Br. Pl.'s Mem. Opp'n, Ex 1.) However, the plaintiff has offered evidence suggesting that Apple approved Ms. Peltier's termination. (*See* Seelye Dep. at 65–67, Pl.'s Rebuttal Defs.' Reply Br., Ex .B (stating that Susan Misiorski, Apple's director of patient services, gave the final approval for Ms. Peltier's termination).) More generally, Apple apparently hires and trains employees which are sent to a network of nursing homes, including Brightview. (*See id.* at 17–18 (stating that Apple has a network of nursing facilities between which staff is regularly transferred).) Additionally, the training and employee handbook provided by Apple to its employees addresses the progressive discipline process to be followed at Brightview. (*See id.* at 28–35.)

Finally, the plaintiff offers evidence suggestive of common ownership and financial control. Brian J. Foley, owner and president of Brightview, is also president of Apple. (*See* Browning Aff. ¶ 3, Pl.'s Mem. Opp'n Defs.' Mot. Summ. J., Ex. D.) Mr. Foley is also treasurer of both entities. (*See id.* ¶ 3.) Furthermore, under the operative management agreement, Apple provides Brightview with accounting services. (*See* Hambley Aff. ¶ 7, Def.'s Reply Br. Pl.'s Mem. Opp'n., Ex. 1.)

■ Applying the four-factor test to the instant case, the court concludes that there remains a genuine issue of fact as to whether Apple may be liable to the plaintiff for employment discrimination under the single employer doctrine. *See Lihli Fashions Corp., Inc.,* 80 F.3d at 746 (stating that determination of single employer status is a question of fact). Therefore, the court agrees with the plaintiff that summary judgment is inappropriate on this ground at this juncture. *See Gabriele v. Cole Nat'l Corp.,* 78 F.Supp.2d 61, 66 (N.D.N.Y.1999) (finding that summary judgment is premature where facts are in dispute with respect to the nature of the

relationship between parent corporation and retail chain).

### B. Joint Employer Doctrine

"In contrast [to a single employer situation], in a 'joint employer' relationship, there is no single integrated enterprise. A conclusion that employers are 'joint' assumes that they have merely chosen to handle certain aspects of their employer-employee relationships jointly." *Clinton's Ditch Coop. Co.*, 778 F.2d at 137 (citing *NLRB v. Browning–Ferris Indus. of Pa., Inc.*, 691 F.2d at 1122). The Second Circuit has identified five factors relevant to determining joint employer status. *See id.* at 139. The inquiry includes "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT&T v. NLRB*, 67 F.3d 446, 451 (2d Cir.1995).

In the instant case, the plaintiff has offered evidence suggesting that Apple played a role in Brightview's firing decisions as well as the administration of disciplinary procedures. (*See* Seelye Dep. at 28–35, 65–67, Pl.'s Rebuttal Def.'s Reply Br., Ex. B.) However, the plaintiff fails to offer any evidence demonstrating that Apple plays a role in payroll, supervision of employees or participation in the bargaining process at Brightview. (*Cf.* Hamley Aff. ¶ 3, Defs.' Reply Br. Pl.'s Mem. Opp'n, Ex. 2 (stating that the administrator at Brightview has "final day-to-day control of Brightview's hiring, firing and payroll functions").)[2]

Although there is less support for Ms. Peltier's joint employer claim, the evidence before the court thus far does create a question of fact regarding Apple's potential liability to the plaintiff for employment discrimination under either the joint or single employer doctrines. Therefore, the defendants' motion for summary judgment with respect to the plaintiff's claims against Apple is hereby denied. *See Gabriele*, 78 F.Supp.2d at 66 (concluding that summary judgment is premature where facts are in dispute with respect to the nature of the relationship between parent corporation and retail chain).

### II. The Plaintiff's Age Discrimination Claim Pursuant to the ADEA

The defendants jointly move for summary judgment with respect to the plaintiff's ADEA claim on the ground that it is time-barred because the plaintiff failed to file suit within ninety days of her receipt of a right to sue letter from the EEOC and there is no basis upon which to apply the doctrine of equitable tolling to this case.

Ms. Peltier concedes that she filed this action 247 days after the EEOC issued her right to sue letter. However, she states that she never received the EEOC's right to sue letter. Moreover, Ms. Peltier contends that the letter she received from the EEOC dated February 25, 1998, led her to believe that the EEOC was not going to send her a right to sue letter.[3] As a result, the plaintiff argues that she was unaware of the ninety-day statute of limitations and requests equitable modification of the statutory requirements.

A claim under the ADEA must be filed within ninety days of receipt of a right to sue letter. *See* 42 U.S.C.2000e–5(f)(1). Within the Second Circuit, when the date of receipt is challenged, there is a

---

2. The plaintiff notes that she has yet to take the depositions of Mr. Hamley and other managers at Brightview.

3. The EEOC's February 25, 1998, letter reads in part: "This is in response to your request for issuance of a Notice of Right–to–Sue Upon Request. Our records reveal that the charge was filed under the Age Discrimination in Employment Act. A lawsuit under the ADEA may be filed at any time 60 days after the charge was filed. A Right–to–Sue Upon Request is not a prerequisite to filing suit under the ADEA." (Defs.' Mem. Supp. Mot. Summ. J., Ex. 6.)

presumption that the letter is received three days after it is mailed. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). The presumption may be rebutted, however, "by admissible evidence, such as an affidavit by the claimant stating the actual date of receipt (or ... lack thereof)." *Brown v. Pratt & Whitney Div.*, No. 3:96CV525 (GLG), 1997 WL 573462, at *2 (D.Conn. Aug.28, 1997); *cf. Cook v. Providence Hosp.*, 820 F.2d 176, 179–180 (6th Cir.1987)(determining that dismissal was appropriate where claimant alleged non-receipt of a right to sue letter, but was aware that the letter had been sent).

In the present case, Ms. Peltier states in a sworn affidavit that she never received the Right to sue letter from the EEOC, and she saw a copy of said letter for the first time in connection with the instant litigation in October of 1999. (*See* Peltier Aff. ¶ 4, Pl.'s Mem. Opp'n. Def.'s Mot. Summ. J, Ex. G.) Further, Ms. Peltier asserts that she had no reason to suspect that a letter had or would be sent in light of the EEOC's letter dated February 25, 1998, informing her that a right to sue letter was not a prerequisite to filing suit under the ADEA.[4] Thus, the court finds that the plaintiff has successfully rebutted the presumption of receipt with respect to the right to sue letter for the purposes of the instant motion. Moreover, as the plaintiff initiated this action within ninety days of obtaining legal counsel in December of 1998, the court concludes that

her claim pursuant to the ADEA is timely.[5]

Accordingly, the defendants' motion for summary judgment with respect to the plaintiff's ADEA claim contained in count one of the amended complaint is hereby denied.

### III.  The Plaintiff's Disability Discrimination Claim Pursuant to the ADA

The defendants also move for summary judgment with respect to the plaintiff's disability discrimination claim under the ADA on the ground that she failed to file an administrative claim alleging disability discrimination with either the CCHRO or the EEOC. In response to the defendants' argument, Ms. Peltier claims that her disability discrimination claim was reasonably related to the age discrimination claim she filed with the agencies and, upon review of the facts, an EEOC investigator would have investigated this alternative basis of discrimination.

It is well established that a plaintiff must file a charge of disability discrimination with the EEOC and obtain a right to sue letter from the EEOC before proceeding in federal district court. *See* 42 U.S.C. § 12117 (adopting for claims under Title I of the ADA the administrative exhaustion requirement of Title VII codified at 42 U.S.C. § 2000e–5); *Finley v. Giacobbe*, 827 F.Supp. 215, 219 n. 3 (S.D.N.Y.1993) (Goettel, J.) (recognizing that Title I of the ADA incorporates Title VII's enforcement procedures). The Second Circuit has recognized an exception to the EEOC charge requirement when the claims in the com-

---

4. The defendants argue that the correspondence the plaintiff received from the EEOC was clear and unambiguous. However, upon review of the EEOC's letter dated February 25, 1998, the court concludes that a reasonable person, without the benefit of counsel, could be confused as to their course of action upon receipt of such a letter.

5. The defendants argue that neither the plaintiff's pro se status nor her alleged non-receipt of the right to sue letter justifies equitable tolling in this case. The defendants further

allege that equitable tolling is unavailable because the plaintiff did not act diligently in pursuing this matter. However, the court need not apply equitable tolling to the present case because the applicable statute of limitations did not begin to run until the plaintiff presumably became aware of her right to sue when she obtained counsel in December, 1998. Furthermore, the court notes that Ms. Peltier was diligent in pursuing her claims prior to her receipt of the EEOC's letter dated February 25, 1998.

plaint, although not listed in the original EEOC charge, are " 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Dept. of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993) (quoting *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985)). Although the EEOC complaint is to be read broadly, "[t]he federal action is limited to the bases of allegations which are within the scope of the EEOC investigation." *Kent v. AVCO Corp.*, 815 F.Supp. 67, 70 (D.Conn.1992).

■ In the present case, the court finds that there is nothing in the plaintiff's CCHRO complaint (which was forwarded to the EEOC under the agency's dual filing process) which would alert the investigators to her alleged disability discrimination claim. Moreover, the plaintiff's letter requesting reconsideration of the CCHRO's dismissal of her age discrimination claim does not serve to place the agency on notice of a disability discrimination claim. (*See* 11/4/97 Reconsideration Request, Pl.'s Mem. Opp'n. Defs.' Mot. Summ. J., Ex. K ("I believe that my employer wanted younger workers because it would reduce health care costs and the employer would avoid having to help older workers who need assistance with heavy manual labor.").)

Accordingly, the court concludes that the plaintiff's ADA claim is not reasonably related to the ADEA claim she filed with the CCHRO and EEOC. As such, she cannot maintain this claim in the instant action. *See Sank v. City Univ. of New York*, No. 94 CIV 0253(RWS), 1995 WL 314696, *3–4 (S.D.N.Y. May 24, 1995) (dismissing a complaint under the ADA for lack of subject matter jurisdiction where allegations in plaintiff's complaint were not reasonably related to allegations in EEOC charge).

The defendants' motion for summary judgment with respect to the plaintiff's ADA claim contained in count two of the amended complaint is therefore granted.

## IV. The Plaintiff's Age and Disability Discrimination Claims Pursuant to Conn. Gen.Stat. § 46a–60(a)(1)

The defendants next move for summary judgment with respect to the plaintiff's state law age discrimination claim on the ground that she failed to file the instant action within ninety days after her complaint was dismissed by the CCHRO. *See* Conn. Gen.Stat. 46a–100(e) ("Any action brought by the complainant in accordance with section 46a–100 shall be brought within ninety days of receipt of the release from the commission."). The defendants also argue that summary judgment is appropriate with respect to the plaintiff's state law disability discrimination claim because the plaintiff failed to file an administrative charge alleging disability discrimination with the CCHRO. Ms. Peltier requests that the statute of limitations be tolled for her state law discrimination claims due to the confusion that resulted from contradictory letters she received from the EEOC and the CCHRO.

■ Although raised by neither party, the court concludes that it does not have subject matter jurisdiction over the plaintiff's state law discrimination claims because the plaintiff did not obtain a release from the CCHRO prior to filing suit in federal court. *See* Conn. Gen.Stat. § 46a–100 ("Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, may also bring an action in the superior court ...."); Conn. Gen.Stat. § 46a–101(a) ("No action may be brought in accordance with section 46a–100 unless the complainant has received a release from the commission in accordance with the provisions of this section."). Indeed, the Connecticut Fair Employment Practices Act appears to provide for an independent right of action in state court only if the complainant requests and is granted a release from the commission *prior* to final

adjudication of her complaint before the commission. *See* Conn. Gen.Stat. § 46a–101 (entitled "Release of *pending* complaint alleging discriminatory practice.") (emphasis added); Conn. Gen.Stat. § 46a–83a ("If a complaint is dismissed pursuant to subsection (b) of section 46a–83, . . ., and the complainant does not request reconsideration of such a dismissal as provided in subsection (e) of said section 46a–83 the executive director of the commission shall issue a release and the complainant may, within ninety days of receipt of the release from the commission, bring suit in accordance with section 46a–100 . . . .").[6] In the event that the CCHRO rejects a request for reconsideration after dismissing a complaint, as was the case in the instant matter, the complainant's only avenue of relief is to file an administrative appeal to the Connecticut Superior Court. *See* Conn. Gen.Stat. § 46a–94a ("[A]ny complainant aggrieved by . . . rejection of reconsideration of any dismissal as provided in subsection (e) in said section 46a–83 may appeal therefrom in accordance with 4–183.").

Accordingly, the defendants' motion for summary judgment with respect to the plaintiff's state law discrimination claims pursuant to Conn. Gen.Stat. § 46a–60 contained in counts three and four of the amended complaint is granted. *See Locasio v. Winchester Board of Education*, No. 3:98CV1556 (RNC), 2000 WL 303224, * 4 (D.Conn. Feb.17, 2000) (granting summary judgment on the ground that the plaintiff's failure to obtain a release from the CCHRO after it had dismissed the plaintiff's complaint and rejected reconsideration deprived the court of subject matter

jurisdiction over the plaintiff's state law discrimination claim).[7]

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment **(Doc. # 20)** is **GRANTED** with respect to the plaintiff's claims pursuant to the ADA and Conn. Gen.Stat. § 46a–60(a)(1) contained in counts two, three and four of the amended complaint. The motion is **DENIED** in all other respects.

As discovery has concluded and the court has ruled on the aforementioned dispositive motion, this matter is deemed trial ready.

The parties shall file their joint trial memorandum by **November 17, 2000**. If any party fails to cooperate in the filing of the joint trial memorandum, the memorandum shall be filed individually and the noncooperating party shall have its case defaulted, dismissed, and/or sanctions imposed.

The parties shall contact the undersigned's chambers during the week of **October 9, 2000**, to schedule a settlement conference prior to **November 17, 2000**, which shall not delay the filing of the trial memorandum. Further, the parties shall appear before the undersigned for a pretrial conference on **November 21, 2000**, at 4:00 p.m. This case shall be tried during **December, 2000**, with jury selection taking place on **December 5, 2000**.

It is so ordered.

---

6. The court notes that prior to its amendment, effective July 1, 1998, § 46a–83a stated: "If a complaint is dismissed pursuant to subjection (b) or (c) of section 46a–83, or if a reconsideration of a dismissal as provided in subsection (e) of section 46a–83 is rejected, the complainant shall have a right of appeal pursuant to section 46a–94a." However, regardless of which version of the statute is applicable to the instant matter, the plaintiff's reconsideration request forecloses the possibility of bringing a separate action in state or federal court.

7. In the event that the court were able to exercise subject matter jurisdiction over these claims, the plaintiff's disability discrimination claim would be subject to summary judgment on the additional ground that the plaintiff failed to timely file a complaint with the CCHRO alleging disability discrimination. *See* discussion, *infra*, regarding the plaintiff's disability discrimination claim pursuant to the ADA.