Gary **LABARBERA, Larry Kudla, Dennis Gartland, Robert Haeseker, Chester Broman, Josseph Ferrara, Frank Finkel and Theodore King, as Trustees and Fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick leave Trust Funds, Plaintiffs,**

v.

**C. VOLANTE CORP., C. Volante Trucking Corp., and Vital Trucking Corp., Defendants.**

No. 98–CV–5005 NG.

United States District Court, E.D. New York.

Sept. 26, 2001.

Michael Bauman, New York, NY, for plaintiff.

Robert M. Ziskin, Commack, NY, for defendant.

## ORDER

GERSHON, District Judge.

This action is brought pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and

1145 for recovery of delinquent pension fund contributions for the period of October 1, 1993 to June 30, 1997. By order dated November 7, 2000, I granted plaintiffs' motion for default judgment against defendants C. Volante Corp. ("Volante") and C. Volante Trucking Corp. ("Trucking"). Plaintiffs now move for summary judgment against the remaining defendant, Vital Trucking Corp. ("Vital"). Defendant Vital opposes the motion and cross-moves to dismiss the complaint.

### A. Facts:

All material facts are undisputed.

Plaintiffs are the trustees of the Local 282 Welfare, Pension Annuity and Job Training Trust Funds ("Funds"), which were established pursuant to collective bargaining agreements ("CBAs") between Building Material Local Union 282 of the International Brotherhood of Teamsters ("Union") and employers who utilize Union labor.

The obligations of employers are set forth in the "Agreement and Declaration of Trust" ("Trust Agreement"). The Trust Agreement defines an "employer" in relevant part as "each employer who has duly executed a collective bargaining agreement with the Union." Trust Agreement at I, § 1. Pursuant to the Trust Agreement, employers are required to make certain contributions to the Funds based upon the amount of Union labor they use.

Defendant Volante was a signatory to a CBA with the Union that was in effect between July 1, 1987 and June 30, 1990, but the company has not been a signatory to the CBAs that have been in effect since July 1, 1990. In *Brown v. C. Volante Corp.*, 1997 WL 441799 (E.D.N.Y.1997), *affirmed* 194 F.3d 351 (2d Cir.1999), this court granted Trustee plaintiffs' motion for summary judgment and held that Volante was liable to the Trustees for delinquent

pension fund contributions because Volante had adopted the CBAs through a course of conduct for the period from May 30, 1990 to September 30, 1993. As in the 1990 to 1993 period, Volante continued to submit monthly fund contributions and dues checkoffs and remittance reports throughout the 1993 to 1997 period. These reports were on forms which state that the report is submitted in accordance with the CBA. Volante also continued to maintain a surety bond, permit audits, and use only drivers who are members of the Union or have sought to become members.

Trucking was formed in 1993. Rita Volante was the sole owner, director, and officer of both Volante and Trucking. However, Rita's son, Carmine Volante, has been managing, supervising, and operating Volante and Trucking since 1995. Rita was responsible for labor relations and prepared the payroll for both companies until 1995; then Carmine took over these functions. The working conditions of both companies were the same. Volante and Trucking used the same insurance broker. Both Volante and Trucking ceased operations in June 1997.

Vital was formed shortly thereafter, in July 1997, during the pendency of the cross-motions for summary judgment in *Brown*. Vital was formed because the defendants believed they needed a CBA in order to obtain Union jobs. Thus, Vital has been a signatory to a series of CBAs from July 1, 1997 through June 30, 2002. Volante, Trucking, and Vital have had the same employees, customers, accountants, attorneys, business purpose of moving construction materials, equipment, assets, property, and principal place of business. All the bills to the principal place of business are addressed to Volante and paid with checks from Vital. This principal place of business has had one telephone number for all three companies and one

sign, which reads "C. Volante." The signs on the common trucks read "C. Volante Trucking."

Sherry Volante, Rita's daughter-in-law and Carmine's sister-in-law, is the sole owner, director, and officer of Vital. She has management authority, although Carmine and Thomas, who is Sherry's husband and Carmine's brother, assist in the operations. Sherry has no experience in the trucking business, but Carmine and Thomas have 60 years of experience between them. Third parties have dealt with any family member when conducting business with any of the three companies. In March 1998, plaintiffs performed a payroll audit of Trucking for the period from March 1, 1991 to September 28, 1997.

*B. Analysis:*

■ Volante is liable for the delinquent trust fund contributions for the period of October 1, 1993 to June 30, 1997. Defendant Vital raises three arguments in support of its claim that Volante is not liable for the delinquent contributions, all of which have been addressed already in *Brown,* 1997 WL 441799 *2, *affirmed* 194 F.3d at 353–54. They argue that this court lacks subject matter jurisdiction because the National Labor Relations Board ("NLRB") has exclusive jurisdiction and that Volante is not liable because it did not sign the CBAs and because plaintiffs failed to comply with the CBAs. For the reasons stated in *Brown,* all three arguments lack merit. Further, as in the period addressed in *Brown,* Volante indicated its intent to be bound by the CBAs between October 1, 1993 and June 30, 1997. Volante continued to submit monthly fund contributions and dues checkoffs, to provide remittance reports, to maintain a surety bond, to permit audits, and to used only drivers who are members of the Union or have sought to become Union mem-

bers. *See Brown,* 1997 WL 441799 *3, *affirmed* 194 F.3d at 353–56.

■ Trucking and Vital are also liable for the delinquent trust funds because they assumed Volante's liability. As noted above, Trucking is already the subject of a default judgment in this case. Trucking is liable for Volante's obligations under a single employer theory. A company that is not a party to a CBA is liable for the obligations of a company that is a party to the CBA if the two companies are a single employer. Further, the non-party company is bound by the terms of the CBA if the non-party and party companies are a single employer and represent an appropriate bargaining unit. *See Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747–48 (2d Cir.1996).

■ Two companies are a single employer if there is an "absence of an arm's length relationship found among unintegrated companies." *Id.* The Supreme Court has identified four factors to determine whether two companies are a single employer: interrelation of operations, common management, centralized control of labor relations and common ownership. *See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.,* 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam). The Court of Appeals for the Second Circuit has indicated that the use of common office facilities and equipment and family connection between enterprises are also relevant factors. *See Lihli Fashions Corp., Inc.,* 80 F.3d at 747.

■ In this case, Volante and Trucking were a single employer. The interrelation of operations and use of common office facilities and equipment factors are met in this case because the two companies were in the same business of hauling construction materials; used the same trucks, of-

fices, insurance company, accountant, and lawyer; and third parties would deal with any family member when conducting business with either company. Further, the common ownership, common management, and family connection factors are met because Rita Volante owns both companies and Carmine Volante was running both companies. Finally, there was centralization of control of labor relations because Rita, and later Carmine, were responsible for the labor relations of both companies.

■■■■ Moreover, Trucking was bound by the CBAs because Volante and Trucking were an appropriate bargaining unit. In determining the appropriate bargaining unit, attention "shifts from the control, structure and ownership of the employer to the community of interests of the employees." *Cuyahoga Wrecking Corp. v. Laborers International Union of North America, Local Union # 210*, 644 F.Supp. 878, 882 (W.D.N.Y.1986). The reason for the appropriate bargaining unit requirement is to protect the rights of non-union employees to representatives of their choice, or to not have union representation at all. *See Local One Amalgamated Lithographers v. Stearns & Beale*, 812 F.2d 763, 769–70 (2d Cir.1987). Eight factors are relevant in making this determination: geographic proximity, similarity of skills and functions, similarity of employment conditions, centralization of administration, managerial and supervisory control, employee interchange, functional integration of the employer, and bargaining history.

*See Hartford Hospital v. NLRB*, 1996 WL 115331 *3 (2d Cir.1996); *Staten Island University Hospital v. NLRB*, 24 F.3d 450, 454 (2d Cir.1994).[1] As discussed above, there was centralized administration, management, and supervisory control, functional integration of the employer, and geographic proximity. Further, it is undisputed that the companies exchanged employees, the working conditions were the same at both companies, and the employees performed the same job of driving trucks. Thus, Volante and Trucking constituted an appropriate bargaining unit.

■■■■ While plaintiffs are correct to analyze whether Trucking was bound by the CBAs under the single employer theory, this theory is inappropriate for determining whether Vital is bound by the agreements because Volante ceased operations before Vital was created, and the "single employer doctrine generally applies where the entities *concurrently* perform the same function and one entity recognizes the union and the other does not, whereas the alter ego doctrine, by contrast, . . . usually comes into play when a new legal entity has *replaced* the predecessor." *Newspaper Guild of New York Local No. 3 v. NLRB*, 261 F.3d 291, 2001 WL 897569 (2d Cir.2001) (emphasis in original). Nor is the successorship theory (under which a corporation that purchases the assets of, or acquires, another corporation and continues the predecessor's business operations is bound by the predecessor's CBAs)

---

1. The Supreme Court has held that an appellate court reversing the NLRB's determination that two companies are not a single employer should remand the determination of whether the two companies form the appropriate bargaining unit to the NLRB rather than deciding the issue. *See South Prairie Construction Corp. v. Local No. 627, International Union of Operating Engineers*, 425 U.S. 800, 805–06, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976). However, *South Prairie* does not bar a district court from exercising jurisdiction to determine whether two companies form the appropriate bargaining unit in the first instance, where there is no NLRB proceeding. *See Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 513–17 (1982); *Mason Tenders Dist. Council Welfare Fund v. I.T.R.I. Brick and Concrete Corp.*, 1997 WL 678164 *5–9 (S.D.N.Y.1997); *Cuyahoga Wrecking Corp.*, 644 F.Supp. at 882–83.

applicable because plaintiffs have not presented evidence that Vital "purchased" Volante's assets or "acquired" Volante. *See Stotter Division of Graduate Plastics Co., Inc. v. District 65 United Auto Workers,* 991 F.2d 997, 1002 (2d Cir.1993).

■■■■ Rather, the alter ego theory is the most appropriate theory for determining whether Vital is liable for Volante and Trucking's delinquent trust fund contributions. While the alter ego theory has the same binding effect as the other two theories, *see Viking Industrial Security, Inc. v. NLRB,* 225 F.3d 131, 134 (2d Cir.2000), the alter ego theory is conceptually distinct because it focuses on "the existence of a disguised continuance or an attempt to avoid the obligations of a CBA through a sham transaction or technical change in operations." *Lihli Fashions,* 80 F.3d at 748 *quoting Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking Co., Inc.,* 944 F.2d 1037, 1046 (2d Cir.1991) *and Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc.,* 690 F.2d 489, 508 (5th Cir.1982). Whether companies are alter egos is a question of fact. The key factors in determining whether two companies are alter egos are whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. *See Lihli Fashions,* 80 F.3d at 748 *quoting Truck Drivers,* 944 F.2d at 1046 *and Goodman Piping Products v. NLRB,* 741 F.2d 10, 11 (2d Cir. 1981). In addition, anti-union animus may be germane to the analysis, or even sufficient to find that two companies are alter egos, but anti-union motivation is not necessary. *See Goodman,* 741 F.2d at 12.

Under the alter ego doctrine, Vital is liable for the delinquent trust fund contributions of Volante and Trucking. It is undisputed that Volante and Vital share the same business purpose of moving construction materials, the same equipment, and the same customers. Further, Volante family members have owned, managed, supervised, and operated all three companies. That the three companies operated from the same location and that customers spoke to any family member to arrange business with any company also indicate substantial identity of operations. Finally, the formation of Vital while Volante was facing damages for failure to make contributions to the trust fund evidences anti-union animus. Defendant argues that there is no evidence that the formation of Vital was a sham transaction in order to avoid the obligations of a CBA because, shortly after its formation, Vital signed a CBA with the Union. However, that Vital signed a CBA in 1997 does not address the obligation for contributions due in the period from 1993 to 1997.

In sum, there is no issue of material fact that Volante adopted the CBAs through its course of conduct for the period of October 1, 1993 to June 30, 1997, that Trucking and Volante were a single employer, and that Vital is the alter ego of Volante and Trucking.

## C. Conclusion:

For the above stated reasons, defendant Vital's motion for summary judgment is denied, and plaintiffs' motion for summary judgment finding Vital jointly and severally liable with Volante and Trucking is granted.

In addition, the court adopts the unopposed Report and Recommendation of the Honorable William D. Wald, Magistrate Judge, dated July 19, 2001, finding the amount which plaintiffs should be awarded. Judge Wald permitted Vital to appear at the inquest and notes that Vital raised issues only as to its liability and not as to damages. Therefore, the Court directs the Clerk to enter judgment against C.

Volante Corp., C. Volante Trucking Corp., and Vital Trucking Corp. jointly and severally in the following amounts:

$319,496.66 in delinquent contributions,

$288,778.52 in interest pursuant to 29 U.S.C. § 1132(g)(2)(B),

$288,778.52 pursuant to 29 U.S.C. § 1132(g)(2)(C),

$2,170 in auditor fees,

$58,473.75 in attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1), and

$280.10 per diem interest from July 19, 2001, until the date judgment is entered.

**SO ORDERED.**