UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,
*Petitioner,*

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL 24,
AFL-CIO,

*Intervenor,*

v.

KODIAK ELECTRIC COMPANY,
INCORPORATED; KODIAK LINE
COMPANY, INCORPORATED,

*Respondents.*

No. 02-2047

On Application for Enforcement of an Order
of the National Labor Relations Board.
(5-CA-28319)

Argued: April 1, 2003

Decided: July 2, 2003

Before TRAXLER and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Enforcement granted by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Andrew Martin Croll, SCARLETT & CROLL, P.A., Baltimore, Maryland, for Kodiak Electric and Kodiak Line. Siobhan

Mashariki Kelly, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board. Gabriel Antonio Terrasa, ALBERTINI, SINGLETON, GENDLER & DARBY, L.L.P., Owings Mills, Maryland, for Intervenor. **ON BRIEF:** Robert B. Scarlett, SCARLETT & CROLL, P.A., Baltimore, Maryland, for Kodiak Electric and Kodiak Line. Arthur F. Rosenfeld, General Counsel, John E. Higgins, Jr., Deputy General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Charles Donnelly, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Board.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The National Labor Relations Board petitions for enforcement of an order issued against Kodiak Electric Co., Inc., and Kodiak Line Co., Inc. The underlying issue is whether substantial evidence supports the Board's conclusion that Kodiak Line is the alter ego of Kodiak Electric, and, on this basis, whether substantial evidence supports the Board's finding that the company violated Sections 8(a)(1) and (5) of the National Labor Relations Act, *see* 29 U.S.C.A. §§ 158(a)(1) and (5) (West 1998), by refusing to recognize the International Brotherhood of Electrical Workers, Local 24, AFL-CIO (the "Union"), or to apply the terms of the applicable collective-bargaining agreements to unit employees. The Board's findings are substantially supported by evidence in the record; consequently, we enforce the Board's order in full.

I.

Kodiak Electric, a Maryland corporation formed in 1991 with an office and place of business in Baltimore, Maryland, performs interior

electrical work in the construction industry. Interior electrical work is any electrical work, whether outside or inside a building, that is located within the customer's property lines. Timothy Demski, a master electrician licensed by the state of Maryland, served as president, secretary, and sole stockholder of Kodiak Electric. As president, he had sole responsibility for formulating its labor policies and making hiring decisions. Additionally, he helped run Kodiak Electric's day-to-day operations and acted as a field electrician at various job sites.

Prior to 1997, Kodiak Electric operated as a non-union contractor, filling its manpower needs through advertisements in the newspaper. Union representative Robert Kulp encouraged Timothy Demski to enter into a bargaining relationship with the Union. On August 27, 1997, Kodiak Electric recognized the Union, and signed a letter of assent by which it agreed to be bound by the then-current collective-bargaining agreement, as well as subsequent agreements, between the Union and the Baltimore Division, Maryland Chapter, of the National Electrical Contractors Association, Inc. ("NECA"). The contract then in force, as adopted, covered Kodiak Electric's inside journeymen-wiremen, technicians, and apprentices, and ran from April 1, 1996, to March 31, 1999. It provided that the collective-bargaining agreement could be terminated "by the undersigned employer giving written notice at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." J.A. 38 (internal alteration omitted). The contract further provided that, after March 31, 1999, it "shall continue in effect from year to year thereafter unless changed or terminated." J.A. 38 (internal alteration omitted). A successor agreement ran for the period April 4, 1999, to March 31, 2002. Kodiak Electric never signed or expressly adopted the subsequent agreement, but the agreement nevertheless went into effect through the default mechanism.

Kodiak Electric was required under the agreement to make payments on behalf of its unit employees to a fringe benefit fund jointly administered by the Union and NECA, and to furnish a surety bond of $25,000 to secure payment of amounts due under the agreement. Beginning in February 1998, however, Kodiak Electric stopped making payments to the fringe benefit fund. Notwithstanding Kodiak Electric's refusal to make these payments, the Union continued to

send employees to Kodiak Electric upon request through its referral procedure.

Also in 1998, Nikki Demski, Timothy Demski's wife, incorporated Kodiak Line. Since its incorporation, Kodiak Line has operated as a non-union contractor. Kodiak Line was ostensibly created to perform outside line work — that is, work outside property boundaries — primarily for Baltimore Gas and Electric Company. Although she is not an electrician nor is she knowledgeable about electrical work, Nikki Demski became president and sole stockholder of Kodiak Line. Timothy Demski served as both vice president and operations manager, through which roles he oversaw Kodiak Line's equipment, employees, and day-to-day operations.

Kodiak Electric and Kodiak Line kept separate federal employer identification numbers, filed separate tax returns, and signed separate leases. They also maintained separate books, vehicles, professional licenses, and insurance policies. However, the entities operated from a shared facility and shared a fax number in Baltimore. Kodiak Electric made loans to Kodiak Line that Kodiak Line did not repay. Kodiak Line repeatedly paid for goods and services supplied and billed to Kodiak Electric. The entities shared the services of office employees, and they also shared the services of employees who occupied supervisory and field positions within both entities.

In 1998, Kodiak Electric contracted to perform interior electrical work on four projects. The first was for Porter Construction Management ("Porter") at the Kenwood High School job site. Union Agent Gary Griffin received Kodiak Electric's requests for labor and referred approximately twenty to thirty electricians. Some time between January 20 and March 19, 1999, Kodiak Line began performing the work, although Porter had originally contracted with Kodiak Electric. No new contract was executed between Kodiak Line and Porter when Kodiak Line took over the project. Porter also awarded Kodiak Electric a second contract for interior electrical work at the Rockview Elementary School. Late in the year, Porter began to notice that the Rockview project was not properly manned and so contacted Timothy Demski to discuss the problem. Subsequently, a Kodiak Electric electrician observed that three non-union employees were doing inside electrical work on the site. When Union agent Grif-

fin called Timothy Demski to discuss the situation, Demski told Griffin that he was using Kodiak Line employees because union-referred employees were not showing up for work. Demski did not request more labor from the hiring hall, but instead placed an advertisement in the newspaper soliciting electricians for the project. The advertisement requested applicants to fax their resumes to the number shared by Kodiak Electric and Kodiak Line.

In March of 1999, Timothy Demski and a Porter project manager, Peter Robey, discussed manpower problems on the Kodiak Line projects. Demski asked Robey to "write the dirtiest, nastiest letter that [Porter] could" to terminate the contract with Kodiak Electric. J.A. 39. He also told Robey that Kodiak Electric had a "sister company" that did not have the same manpower constraints and could easily absorb the workload that Kodiak Electric had proved unable to handle. J.A. 39. On March 17, Robey sent a letter to Kodiak Electric terminating its contract for the work at the Rockview project. That same day, Porter contracted with Kodiak Line to complete the remainder of the electrical work at a price that reflected the balance of the original contract with Kodiak Electric.

In November 1998, Kodiak Electric bid on two additional interior electrical projects. On November 12, Kodiak Electric submitted a bid to Tech Contracting Company, but subsequently Kodiak Line performed the work. On November 12, Orfanos Construction, Inc., contracted with Kodiak Line to perform interior electrical work, even though Kodiak Electric had submitted the proposal. In March 1999, Kodiak Line informed a supplier for the Tech Contracting Company project that "Kodiak Electric, Kodiak Welding and Kodiak Line have been reorganized under one company — Kodiak Line Corporation, Inc." J.A. 40. Two months later, Kodiak Line informed another vendor that "Kodiak Electric Company has changed its name to Kodiak Line Corporation." J.A. 40.

The case came before the Board on a complaint issued by the NLRB General Counsel following the filing of unfair labor practice charges by the Union. Based on these facts, the Board agreed with the reviewing administrative law judge that an alter ego relationship existed between Kodiak Electric and Kodiak Line because they shared substantially identical management, business purpose, opera-

tions, equipment, customers, and supervision. The Board found that the company had violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C.A. §§ 158(a)(1) and (5), by refusing to apply the terms of the collective-bargaining agreement with the Union to unit employees, by failing to honor the agreement's referral procedures, by repudiating its recognition of the Union, and by causing unit work obtained by Kodiak Electric to be performed by Kodiak Line. The Board's order required the company to cease and desist from the unfair labor practices found, and from interfering with, restraining, or coercing employees in the exercise of their rights guaranteed by the Act. The Board's order also required the Company to honor and abide by the terms and conditions of its agreements with the Union and to make whole those employees represented by the Union who suffered as a result of the company's actions.

The Board now seeks enforcement of the order. The only issue before the Court is whether Kodiak Line is the alter ego of Kodiak Electric.

## II.

Respondents' contention on appeal is that the Board's finding of alter ego status is not supported by substantial evidence. In particular, they point to the separate ownership of the two entities and a lack of evidence that Kodiak Line was formed to avoid Kodiak Electric's obligations under the Union contract. In *Alkire v. NLRB*, 716 F.2d 1014 (4th Cir. 1983), we set forth the test for determining alter ego status:

> When business operations are transferred, the initial question is whether substantially the same entity controls both the old and new employer. If this control exists, then the inquiry must turn to whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations.

*Id.* at 1020. Thus, "the focal criteria of alter-ego analysis are the ensuing degree of control that the employer exerts over the operations of the new employing entity and the foreseeable ensuing benefit it

secures as a result of purging its labor commitments." *NLRB v. McAllister Bros., Inc.*, 819 F.2d 439, 444 (4th Cir. 1987). As to respondents' reliance on the "legal formalities of separate incorporation and distinct equity ownership" to avoid alter ego status, these distinctions "cannot conceal their inextricable relationship." *Id.* at 445.

On the issue of control, the Board found substantial evidence that both Kodiak Electric and Kodiak Line were managed and overseen by Timothy Demski, who obtained and orchestrated work for each entity. Although corporate ownership was not strictly identical in that Timothy's wife, Nikki, held the shares of Kodiak Line, the overlapping control of both entities by Timothy Demski satisfies the control criterion. *See Industrial Turnaround Corp. v. NLRB*, 115 F.3d 248, 250-52 (4th Cir. 1997); *see also Goodman Piping Prods., Inc. v. NLRB*, 741 F.2d 10, 11-12 (2d Cir. 1984) (per curiam) (common ownership found where husband and sole owner of one company managed daily operations and made all employment decisions for his wife's company); *NLRB v. Amateyus, Ltd.*, 817 F.2d 996, 998-99 (2d Cir. 1987) (per curiam) (alter ego found where brothers separately owned two companies, but only one managed and operated both). The evidence indicates that most of the Kodiak Line supervisors came from the ranks of Kodiak Electric and all of them answered to Timothy Demski. Although the two entities kept separate books, utilized separate equipment, and served a certain number of separate customers, the record provides ample evidence that in reality they operated in tandem, sharing common space, equipment, and employees. Significantly, they also explicitly held themselves out to customers and suppliers as a single entity, and Kodiak Line performed a considerable part of the interior electrical work for the customers obtained by Kodiak Electric.

As to the benefits secured by Kodiak Electric's avoidance of its labor obligations, the record supports the Board's finding that Timothy Demski diverted the bargaining unit work of Kodiak Electric to the newer, nonunion Kodiak Line and that he eventually did not apply the labor agreement, at all, to the work of either entity. There is evidence that by 1998 he had made clear his dissatisfaction with Kodiak Electric's contract with the Union and what he viewed as its excessive wage cost provisions. He ceased to make required fringe benefit contributions, transmit union dues, or use the contractual referral provisions. The record thus supports the finding that Kodiak Line served,

in substantial part, to permit Timothy Demski to avoid obligations incurred under Kodiak Electric's contract with the Union and to secure benefits by purging the labor commitments established thereunder. Consequently, we conclude that substantial evidence supports the Board's finding that Kodiak Electric and Kodiak Line are alter egos of one another and that Kodiak Electric abrogated its collective-bargaining relationship with the Union.

## III.

For the foregoing reasons, we enforce the Board's order in its entirety.

*ENFORCEMENT GRANTED*