**MARYLAND ELECTRICAL INDUSTRY HEALTH FUND, et al.**

v.

**KODIAK UTILITY CONSTRUCTION, INC.**

No. CIV. JFM–02–2822.

United States District Court, D. Maryland.

Oct. 27, 2003.

*dus. Health Fund, et al. v. Kodiak Elec. Co., et al.,* Civ. No. 99–790 (D.Md. May 29, 2001). Plaintiffs claim that Kodiak Utility Construction, Inc. ["Kodiak Utility"], defendant, is additionally liable for the debts of Kodiak Line as its alter ego and/or successor or parallel corporation. Plaintiffs have moved for summary judgment. For the reasons stated below, plaintiffs' motion will be granted.

Corey Smith Bott, James T. Kimble, Abato Rubenstein and Abato PA, Baltimore, MD, for Plaintiffs.

Andrew Martin Croll, Robert B. Scarlett, Scarlett and Croll PA, Baltimore, MD, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Kodiak Line Corporation, Inc. ["Kodiak Line"] has failed to make required contributions owed to seven employee-related funds [1], plaintiffs, for the months of July 1998 through February 1999. All but one of these funds are covered by the Employment Retirement Income Security Act of 1974 ["ERISA"].[2] Kodiak Line is liable for these payments as a result of a judgment that it is the alter ego of Kodiak Electric Company, Inc. ["Kodiak Electric"], the corporation that actually incurred the debt. *See Maryland Elec. In-*

## I.

Kodiak Electric was incorporated in the state of Maryland on January 8, 1991, and Timothy Demski served as its president, sole shareholder, officer and director.[3] The company performed electrical construction work, focusing on electrical installation services on commercial construction projects. Kodiak Electric became a signatory to a collective bargaining agreement with I.B.E.W. Local Union No. 24 on August 27, 1997, from which the payment obligations to plaintiffs arose. Kodiak Electric ceased making payments due under this agreement in July 1998, and plaintiffs filed suit on October 23, 1998 to recover the delinquent amounts. Civ. No. 98–3513.

On June 16, 1998, shortly before Kodiak Electric ceased making its payments to plaintiffs, Kodiak Line was incorporated in the state of Maryland. Timothy Demski's

---

**1.** Maryland Electrical Industry Health Fund; Maryland Electrical Industry Pension Fund; Maryland Electrical Industry Severance and Annuity Fund; Local Union No. 24, I.B.E.W. Vacation and Holiday Fund; Maryland Electrical Industry Joint Apprenticeship and Training Committee; National Electrical Benefit Fund; Local Union No. 24, International Brotherhood of Electrical Workers, AFL–CIO.

**2.** The following funds are covered under 29 U.S.C. § 1002(1): Maryland Electrical Industry Health Fund, Local Union No. 24, I.B.E.W. Vacation and Holiday Fund, and Maryland Electrical Industry Joint Appren-

ticeship and Training Committee. The following funds are covered under 29 U.S.C. § 1002(2): Maryland Electrical Industry Pension Fund, Maryland Electrical Industry Severance and Annuity Fund, and National Electrical Benefit Fund.

**3.** At the time of incorporation, Kodiak Electric had a second director, Ed Jagodzinksi. But in December 1997, Timothy Demski signed one document as the company's secretary, president and stockholder, noting that the company had chosen to have no board of directors. *See Kodiak Electric,* Civ. No. 99–790.

wife, Nikki Demski, is sole shareholder, officer and director of Kodiak Line. (N. Demski Affidavit, Ex. 1 to Defendants' Opposition). Kodiak Line performed electrical construction work, specifically focusing on electrical line and meter services for public utilities.

On January 27, 1999, after Kodiak Electric repeatedly failed to respond to plaintiffs' complaint, a default judgment was entered in the amount of $235,236.39, and Kodiak Electric's motion to vacate said judgment was denied on April 20, 1999. Kodiak Electric ceased doing business in approximately February 1999.

Consequently, plaintiffs filed a second suit on March 19, 1999 against Kodiak Line as the alter ego of Kodiak Electric in an attempt to recover the judgment entered against the latter. *Kodiak Electric,* Civ. No. 99–790. Plaintiffs' motion for summary judgment was granted on May 29, 2001.[4]

In the spring of 2000, in the midst of this second litigation, Kodiak Line ceased operations, and Kodiak Utility was incorporated.[5] Nikki Demski is sole shareholder, officer and director of Kodiak Utility, which provides underground electrical line services for public utilities, mostly Baltimore Gas & Electric ("BG & E"). (N. Demski Affidavit, Ex. 2 to Defendants' Opposition). Plaintiffs now seek, in this third suit, to hold Kodiak Utility responsible for delinquent payments to the various funds as the alter ego of Kodiak Line. Plaintiffs seek damages in the amount of $450,181.39.

Kodiak Line and Kodiak Utility are separately incorporated, licensed and insured. They have separate assets and tax and loan liabilities.

Ms. Demski is the sole shareholder, officer and director of both Kodiak Line and Kodiak Utility, but the record establishes that she served the roles of officer and director in name only. It is her husband, Timothy Demski, who controls day to day operations. Ms. Demski, by contrast, knows virtually nothing about the operations of either company.

She does not know if there are any other officers, stockholders or a board of directors for Kodiak Line.[6] (N. Demski Dep. 2003, Ex. 12 to Plaintiffs' Motion for Summary Judgment, 15). Although Kodiak Line ceased operations several years ago, Nikki does not know whether it is still in business. *Id.* Even when Ms. Demski claims to have exercised authority, which is rare in itself, her statements are often inconsistent. In her deposition for *Kodiak Electric,* she claimed to have been involved in negotiating a contract with BG & E on behalf of Kodiak Line, (N. Demski Dep. 1999, 11), however, in her deposition in this case, Ms. Demski stated that she was not involved in the negotiation of any contracts on behalf of Kodiak Line. (N. Demski Dep. 2003, 10–11).

Ms. Demski is equally unaware of operations at Kodiak Utility. She is in the office only one morning a week, and is never in the field. *Id.* at 14. In spite of the fact that she signed the articles of incorporation, she does not know where or when Kodiak Utility was incorporated, or

---

4. In addition, the Fourth Circuit recently granted the National Labor Relations Board's petition for enforcement of an order holding that Kodiak Line was the alter ego of Kodiak Electric. *See NLRB v. Kodiak Elec.,* 70 Fed. Appx. 664, 2003 WL 21509004 (4th Cir.2003).

5. Kodiak Line ceased operations in April 2000, and Kodiak Utility was incorporated in Maryland on March 27, 2000.

6. This statement is in direct conflict with her affidavits wherein she claims to be the sole shareholder, officer and director of both companies.

why it was formed. *Id. at* 9. She is not aware of any projects on which Kodiak Utility is currently working. *Id.* at 10. She does not know how many employees Kodiak Utility employs, and does not know what her husband's responsibilities are with regard to the company. *Id.* at 12, 14. Although she was able to list five employees by name, she could not say what function any of them performs. *Id.* at 12–13. She has the authority to sign checks, and her self-described role in the corporation involves ensuring that checks that are written are recorded on the computer, filing check copies, and checking the computer printout against bank statements. *Id.* at 9–10. She not involved in the negotiation of contracts on behalf of Kodiak Utility. *Id.* at 9.

Kodiak Utility has office space in the same building where Kodiak Line was previously located. In fact, although defendants assert that the companies have distinct business addresses (Kodiak Line: 1316 South Baylis, Kodiak Utility: 1314 South Baylis), this is not a meaningful distinction as even defendants themselves do not seem to respect it.[7] The assorted licensing, insurance, and title documents produced by defendants in this case at times list Kodiak Utility's address as 1314 South Baylis, but at other times list it as 1316 South Baylis.

Kodiak Utility also uses tools and office equipment previously owned by Kodiak Line, for which no lease or sale agreement

exists. (T. Demski Dep.2003, 20–21). Kodiak Utility leases several vehicles from Kodiak Line, but payments are apparently made to Regal Bank & Trust in order to pay off loans Kodiak Line used to buy the vehicles. *Id.* at 21–22. Both companies have used Regal Bank & Trust for their banking needs. *Id.* at 26–27.

## II.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted when there is "no genuine issue of material fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In evaluating summary judgment motions, the court must draw all inferences from the underlying facts in the light most favorable to the non-movant. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538. Summary judgment is proper unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

## III.

### A.

▮▮▮▮ Plaintiffs argue that Kodiak Utility is liable for the debts of Kodiak Line as an alter ego or parallel corporation.[8] Alter

---

7. Previously, Kodiak Electric was located at 1316 South Baylis, and Kodiak Line was located at 1314 South Baylis. (T. Demski Dep. 1999, Ex. 4 to Plaintiffs' Motion for Summary Judgment, 91). Despite the different street numbers, Timothy Demski acknowledges that the same door is used to access both offices. (T. Demski Dep.2003, 5–6).

8. Defendants contend that if I find an interrelationship between Kodiak Utility and Kodiak Line, Kodiak Utility would be more properly deemed the successor to, as opposed to the

alter ego of, Kodiak Line. *NLRB v. Burns,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). The court rejected this argument in *Kodiak Electric,* Civ. No. 99–790, holding *Burns* inapposite because it deals with a later corporation's obligations under the prior corporation's collective bargaining agreement on an ongoing basis, not a later corporation's liability for a prior corporation's past debts as an alter ego. *Belmont* and *Kodiak Electric* both indicate that alter ego analysis is applicable to the case at bar. 139 F.3d at 305–06, Civ. No. 99–790 at *7 n. 6.

ego analysis applies to traditional labor law disputes and to claims involving employee benefit funds brought under ERISA. *Massachusetts Carpenters Central Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 308 (1st Cir. 1998). This doctrine was developed to "prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making a 'mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management.'" *Id.* at 307, *citing NLRB v. Hospital San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir.1994).

■ In assessing alter ego status, courts have considered a variety of factors, including. "continuity of ownership, similarity of the two companies in relation to management, business purpose, operation, equipment, customers, supervision, and anti-union animus . . ." *Id.* at 308. In essence, a court must decide "whether a successor corporation is really the predecessor corporation by another name." *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576 (6th Cir.1986).

■ Noting that courts in most alter ego cases "set out no minimum criteria for applying the doctrine," in *Alkire v. NLRB*, 716 F.2d 1014, 1019–20 (4th Cir. 1983), the Fourth Circuit articulated a two-part test for determining alter ego status. According to this test, the court must first determine "whether substantially the same entity controls both the old and new employer." *Id.* at 1020. If this first step is satisfied, the court must then assess "whether the transfer resulted in an expected or reasonably foreseeable benefit to the old employer related to the elimination of its labor obligations." *Id.*

## B.

■ Most of the of facts cited by defendants in their opposition bear little or no relevance to the question of alter ego status. The separate licensing, insuring, and incorporating of Kodiak Line and Kodiak Utility do not bar a finding of alter ego status. Nor is such a finding precluded by the fact that both companies own separate assets, have separate tax liabilities, and do not share a parent/subsidiary relationship. Such "legal formalities . . . cannot conceal" the "inextricable relationship" of alter ego corporations. *NLRB v. McAllister Bros., Inc.*, 819 F.2d 439, 445 (4th Cir.1987).

Defendants' central argument is that Kodiak Line and Kodiak Utility cannot be classified as alter egos because of the distinct nature of their businesses. According to defendants, Kodiak Line was engaged in "electrical line and meter services for public utilities," while Kodiak Utility provides "underground electrical construction services for public utilities." (Defendants' Opposition, 2). Defendants advanced a virtually identical argument in *Kodiak Electric,* and it was rejected by the court.[9] Civ. No. 99–790 at *8.

Defendants' contention here is similarly unavailing. Courts applying the alter ego doctrine have not required precisely identical business purposes, but only a "substantial identity," *Fugazy Continental Corp., v. NLRB*, 725 F.2d 1416, 1419 (D.C.Cir.1984), or "similarity," *San Rafael*, 42 F.3d at 50, of business purpose. Kodiak Utility's business is sufficiently similar to that of Kodiak Line to justify a finding that they share a "substantial identity" of business purpose. Kodiak Utility uses both tools and employees previously employed by Kodiak Line, and it performs the majority

---

9. There, defendants attempted to distinguish the work of Kodiak Electric, electrical installation services on commercial construction projects, from that of Kodiak Line, electrical line and meter services for public utilities. The court rejected this distinction as insufficient to preclude a finding of alter ego status.

of its work for the same client, BG & E. (T. Demski Dep.2003, 7–8, N. Demski Dep. 1999, 10). In addition, Kodiak Utility's present contracts include "electrical metering work," indicating an overlap with the work performed by Kodiak Line. (T. Demski Dep.2003, 9). Finally, it is the *Alkire* test that controls in this case, and that test does not explicitly require a "substantial identity" of business purpose.

As discussed above, the first step in the *Alkire* test is determining "whether substantially the same entity controls both the old and new employer." 716 F.2d at 1020. The undisputed evidence demonstrates that substantially the same entity controls Kodiak Line and Kodiak Utility in terms of both form and substance. In terms of form, Nikki Demski controls both Kodiak Line and Kodiak Utility, as president and sole shareholder and director of both corporations. In terms of substance, Timothy Demski controlled the day to day operations of Kodiak Line and presently controls the day to day operations of Kodiak Utility. Timothy Demski served as operations manager for both companies, signed checks and negotiated contracts.[10]

The circumstances surrounding the transfer of operations from Kodiak Line to Kodiak Utility present many of the factors courts have found persuasive in supporting a finding of alter ego status, inter alia, sharing of equipment and employees, and "considerable intermingling of the two companies' intra-office affairs". *See Kodiak Electric*, Civ. No. 99–790 at *9, citing *NLRB v. Scott Printing Corp.*, 612 F.2d 783 (3d Cir.1979). The evidence establishes that Timothy Demski continued to control operations despite the nominal change from Kodiak Line to Kodiak Utili-

ty. The first step of the *Alkire* test is therefore satisfied.

With regard to the second step, the Fourth Circuit noted that its "expected or reasonably foreseeable benefit" test represented a "broader standard" than the "anti-union animus" required by some courts. *Alkire*, 716 F.2d at 1020. Continuity of ownership, one of the factors generally considered in determining alter ego status, can be particularly relevant in assessing the expectation or foreseeability of a benefit. As noted by the court in *Kodiak Electric*, "continuity of ownership suggests that the ability of the owners of the first company to evade that company's debts by switching to a second company financially benefits them." Civ. No. 99–790 at *10. There is no dispute here as to continuity of ownership. Kodiak Line and Kodiak Utility were both owned by the same person, Nikki Demski, and were both, in fact, controlled by her husband. By incorporating Kodiak Utility, Timothy Demski was able to continue to perform electrical construction work for BG & E, while evading substantial debts owed to plaintiffs by Kodiak Electric and its alter ego, Kodiak Line.

It was at best reasonably foreseeable, and at worst expected, that the Demskis might evade obligations to plaintiffs by setting up Kodiak Utility during the pendency of the *Kodiak Electric* proceedings, just as it was when the Demskis incorporated Kodiak Line nearly simultaneously with the cessation of payments to the Funds by Kodiak Electric. *See, e.g. LaBarbera v. C. Volante Corp.*, 164 F.Supp.2d 321, 327 (E.D.N.Y.2001)(finding that the formation of a second corporation while the first was facing damages for failure to make required contributions to a

---

**10.** The relative degrees of management control exerted by Mr. and Mrs. Demski is further reflected in their respective salaries. Timothy Demski earned nearly twice the annual salary of Nikki Demski at Kodiak Line, and continues to out-earn her at Kodiak Utility. (T. Demski Dep.2003, 29–30).

pension fund supports a finding of alter ego status as evidence of anti-union animus).[11]

I conclude by noting that very little distinguishes the instant case from *Kodiak Electric*. As plaintiffs point out, they seek a finding that Kodiak Utility is the alter ego of Kodiak Line on "virtually identical grounds" to those relied on in *Kodiak Electric*.[12] It could be argued that there is minimally greater separation of entities in the instant case. For example, Kodiak Line did not make any loans to Kodiak Utility, and Kodiak Utility did not complete any jobs started by Kodiak Line. However, it could similarly be argued that Kodiak Utility and Kodiak Line are more aligned in certain respects than Kodiak Electric and Kodiak Line. For example, both corporations perform the majority of their work for the same client, BG & E, and there is not even a nominal distinction between the leadership of the two companies.[13]

Moreover, any distinctions in the details of the instant case as compared with *Kodiak Electric* are negligible for the very fact that this case was preceded by *Kodiak Electric*. As plaintiffs note in their brief,

"Kodiak Electric, Kodiak Line and Kodiak Utility have made a mockery of the Maryland Code of Corporations and Associations." (Plaintiff's Motion for Summary Judgment, 15). This is the second re-incorporation of an entity intended to perform electrical construction work by the same two individuals, for no readily apparent purpose other than to evade Kodiak Electric's obligations to the Funds.

The alter ego doctrine was designed precisely for cases like the one before this court, "when the corporate shield, if respected, would inequitably prevent a party from receiving what is otherwise due and owing from the person or person's who have created the shield." *Mass. Carpenters Central Collection Agency v. A.A. Building Erectors, Inc.*, 343 F.3d 18, 21 (1st Cir.Mass.2003). Accordingly, just as defendants were not permitted to evade Kodiak Electric's obligations with the incorporation of Kodiak Line, they cannot now evade the those same obligations with the incorporation of Kodiak Utility.

## IV.

For the foregoing reasons, I will grant plaintiffs' motion for summary judgment.[14]

---

11. As noted earlier, the benefit standard followed by the Fourth Circuit is a broader standard than anti-union animus. Therefore, conduct that qualifies under the anti-union animus standard, by definition must be sufficient under the Fourth Circuit's standard.

12. And, as plaintiffs note in their Reply, defendants oppose plaintiffs' motion on "virtually identical" grounds. In fact, reflecting the degree of entanglement of these three corporations, defendants mistakenly refer to Kodiak Electric in a number of places where presumably they intended to refer to Kodiak Line, and at times refer to Kodiak Line where they intended to refer to Kodiak Utility. (Defendants' Opposition at 3,6).

13. Nikki Demski is President, sole director and sole shareholder of both Kodiak Utility and Kodiak Line. Timothy Demski was presi-

dent, sole director and sole shareholder of Kodiak Electric.

14. Plaintiffs have offered the affidavit of Joseph R. Swann, Administrator of the various funds, to attest to the accuracy of the requested amounts of unpaid contributions, liquidated damages, interest and attorney's fees as of October 1999. (Plaintiff's Motion for Summary Judgment, Exhibit 1). Since defendants have not contested the amounts requested by plaintiffs, plaintiffs' order will be entered despite the fact that the liquidated damages requested on behalf of five of the seven funds are slightly greater than 20% of the amounts of the unpaid contributions (the relevant trust agreements and 29 U.S.C. § 1132(g)(2)(C)(ii) provide for liquidated damages of 20%). It may be that the damages were calculated on the basis of not only unpaid contributions, but late payments as well. If defendants want to

A separate order to that effect is being entered herewith.

contest liquidated damages, they should file a motion to alter or amend within 10 days after